### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **TAMMY MINTER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. _____** |
| | § | |
| **JAMES CALEB HENSON, KENNETH** | § | |
| **PORTERFIELD, ELIZABETH** | § | **JURY DEMANDED** |
| **PORTERFIELD, KRISTIN HUNTER,** | § | |
| **AND KEITH COOK** | § | |
| | § | |
| **Defendants,** | § | |

### PLAINTIFF'S ORGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE U.S. DISTRICT JUDGE:

TAMMY MINTER, Plaintiff, files this Original Complaint and Jury Demand against

Defendants JAMES CALEB HENSON, in his individual capacity, KENNETH PORTERFIELD,

in his individual capacity, ELIZABETH PORTERFIELD, in her individual capacity, KRISTEN

HUNTER in her individual capacity, and KEITH COOK in his individual capacity, and in support

alleges the following:

### THE PARTIES

1. Plaintiff **TAMMY MINTER** is a citizen residing in Leon County, Texas.

2. Defendant **JAMES CALEB HENSON** is the District Attorney of Leon County, Texas,

who at all times relevant to this complaint was acting under color of law and is sued in his

individual capacity. He may be served with summons at 155 N. Cass Street, Annex II, 3rd Floor,

Centerville, Texas 75833, or wherever he may be found.

1

3. Defendant **KENNETH PORTERFIELD** is an Investigator for the Leon County District Attorney's Office, who at all times relevant to this complaint was acting under color of law and is sued in his individual capacity. He may be served with summons at 155 N. Cass Street, Annex II, 3rd Floor, Centerville, Texas 75833, or wherever he may be found.

4. Defendant **ELIZABETH PORTERFIELD** at all relevant times was acting under color of law as Supervisor at the Leon County Office of Adult Probation. She may be served with summons at 129 E. Main Street, Centerville, Texas 75833, or wherever she may be found.

5. Defendant **KRISTIN HUNTER** at all relevant times was acting under color of law and was the Director of Adult Probation, Walker County, Texas. She may be served with summons at 705 FM 2821, Huntsville, Texas 77320, or wherever she may be found.

6. Defendant **KEITH COOK** is the County Attorney of Leon County, who at all times relevant to this complaint was acting under color of law and is sued in his individual capacity. He may be served with summons at 130 E. St. Mary's Street, Centerville, Texas 75833, or wherever he may be found.

## JURISDICTION AND VENUE

7. Tammy Minter brings this lawsuit for violations of her rights, and conspiracy to violate her constitutional rights, under the Fourth and the Fourteenth Amendments to the U.S. Constitution. 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201.

8. This Court has jurisdiction under 28 U.S.C. § 1331 because Tammy Minter brings claims under the U.S. Constitution and federal laws. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Tammy Minter seeks to redress the deprivation of federal constitutional rights under the color of state law or custom.

9. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) as most of the events giving rise to Plaintiff's claim and injuries occurred in this district and this division.

## INTRODUCTION

10. Tammy Minter worked hard and well as an employee of the State of Texas for over twenty years. Seventeen years of her State service was as an employee of the Leon County Adult Probation Office.

11. Defendants made the decision for no lawful purpose to destroy Tammy Minter's life, strip away her job, and expose her to public ridicule.

12. Defendants knowingly planned and carried out a scheme to fabricate a false criminal claim that Tammy Minter intentionally misled State Trooper Robert Arellano while he investigated a complaint made against Tammy Minter's husband James McClellan on the afternoon of August 18, 2024.

13. The primary tool Defendants used to inflict injury on Tammy Minter was the abuse of the governmental powers each possessed. The common thread of Defendants' abuse of power was their knowing willingness to contrive a distorted and false narrative about Tammy Minter's limited contact with Trooper Robert Arellano while the Trooper investigated the complaint made against her husband, James McClellan.

14. Defendants' false narrative unlawfully benefited Defendants in at least two ways. Defendants attack on Tammy Minter gave Defendant James Caleb Henson leverage in his plea negotiations with Tammy Minter's husband. Defendants scheme also gave Defendants Elizabeth Porterfield and Kristin Hunter unlawful leverage to force Tammy Minter to resign from the job she held for seventeen years. Defendants' unlawful scheme cost Tammy Minter her job, her freedom, her reputation, and her dignity.

15. Defendants are all government officials who acting under the color of the law deprived Tammy Minter of her rights protected by the Constitution of the United States of America's Fourth and Fourteenth Amendments.

16. Defendants violated Tammy Minter's Fourth Amendment constitutional rights by arresting her and charging her with knowingly attempting to deceive Trooper Robert Arellano, investigation of her husband, James McClellan, and seizing and searching her property without probable cause. Defendants knowingly, or with deliberate indifference, used a contrived, distorted, and false story to accuse Tammy Minter of intentionally misleading Trooper Robert Arellano's investigation of a complaint against her husband, James McClellan. This false story is set out in the sworn affidavit of Defendant Kenneth Porterfield and an email sent by Defendant Henson to Defendant Hunter. This false story is blatantly contradicted by the detailed report of Trooper Robert Arellano.

17. Defendants violated Tammy Minter's Fourteenth Amendment right to procedural due process by depriving her of liberty and property without fair legal procedures.

18. Defendants violated Tammy Minter's Fourteenth Amendment right to substantive due process by official misconduct that was arbitrary and so extreme and outrageous that it shocks the conscience.

19. Defendants' misconduct violated clearly established constitutional rights that a reasonable person would have known at the time the misconduct occurred.

## FACTUAL ALLEGATIONS

20. Tammy Minter and James McClellan are husband and wife.

21.  August 18, 2024, a Sunday, James McClellan left home early to work a second job. He was painting a house. Tammy Minter spent most of the morning and early afternoon cleaning

her home. Mid-afternoon, Tammy Minter, who suffers from scoliosis was in some pain and needed to rest. She laid down in her bed and fell asleep. Loud banging on the front door awakened her. She looked out her bedroom window and saw a law enforcement vehicle parked outside. She did not see her husband's truck in the driveway and assumed he had not returned from his house painting work. She had just been awakened by the Trooper's door knocking, was a bit disoriented, and was wearing the same clothes in which she had cleaned the house. She felt uncomfortable about her appearance; however, she wanted to get to the door quickly because she was instinctively concerned that something may have happened to her mother who is ninety-two years old. After answering the door and processing that Trooper Robert Arellano wanted to speak with her husband about some sort of traffic incident, she turned toward the door, gestured toward the clothes she was wearing, and apologetically let Trooper Arellano know that she had been cleaning house and would use her phone to reach her husband. She immediately went to the bedroom to retrieve her cell phone. While she was standing in the kitchen calling her husband, she caught a glimpse of her husband's arm. He was sitting in their den asleep in a chair. She went into the den, woke him up and told him a State Trooper was outside and wanted to speak with him about an incident that had just occurred. While James McClellan went outside to speak with the officer, Tammy Minter changed into clean clothes. She was embarrassed that when she first spoke with the officer, she was not wearing a bra and had on dirty clothes. When Tammy Minter joined her husband and Trooper Arellano, she was upset and confused as she tried to process it all mentally but never spoke rudely or loudly and always kept a respectful distance from Trooper Robert Arellano and her husband.

22. Trooper Robert Arellano arrested James McClellan and transported him to the County Jail. Officer Arellano prepared a detailed report on the events related to his investigation and arrest

5

of James McClellan.  His detailed report neither says nor implies any wrongdoing by Tammy Minter.

23. Trooper Arellano's "Narrative Text of ARREST DETAILS" has 115 numbered paragraphs, and only 6 of these mention Tammy Minter. Those 6 paragraphs report the following:

32. "I knocked on the door and met with a WF, Tammy Renee Minter who stated this was her residence."

33. "I advised her of the incident and told her who I was looking for, James Theodore McClellan."

34. "Minter stated that was her husband but believed he was out working."

64. "Minter, who was there for the entire contact, stated that 'Jimmy is an aggressive driver' and began describing how he drives and acts on the road. Minter was visibly upset and asked McClellan, 'Look what you did'."

65. "Minter stated McClellan and her do not regularly drink and stated they both were employees of State."

67. "Minter stated she works for the State in the probation offices and McClellan stated he is a Captain for the Texas Department of Criminal Justice at Sam Houston State University. Minter walked away and stated she was going to look for "empty beer cans" inside the house because that was a rare occasion of alcohol consumption by McClellan and she couldn't believe it."

24. Trooper Arellano's report describes his administration of a field sobriety test on James McClellan and the conclusions that he drew from in paragraphs 68-90 that make no mention at all of Tammy Minter.

25. Officer Arellano wore a body camera that was activated with video and audio.  Officer Arellano had access to that body camera footage when preparing his report. Officer Arellano's report says nothing regarding misconduct on the part of Tammy Minter.

26. The charging and prosecution of James McClellan was handled and directed by Defendant James Caleb Henson.

27. Seventy-five days, almost seven weeks after James McClellan's arrest, Defendant Kenneth Porterfield produced a sworn affidavit for the purpose of having Tammy Minter arrested for making a false report to Trooper Arellano and interfering with Trooper Arellano's administration of his field sobriety test. In the false story contrived by Defendants, Tammy Minter is accused of knowingly attempting to deceive Trooper Arellano by denying that James McClellan was at home. Tammy Minter did not think her husband was at home when she answered the door and first spoke with Trooper Robert Arellano. In Defendants' false story Tammy Minter somehow tried to deceive Trooper Robert Arellano by saying she was cleaning and later that she was sleeping. Both are true statements, and neither would justify any criticism at all. They certainly do not support stripping Defendant Henson's Court appearance ban, or her arrest, jailing, and criminal prosecution. Defendants false story has Tammy Minter interfering in Trooper Robert Arellano's field sobriety test. No such thing happened. In Trooper Robert Arellano's detailed report of the events to which he was an actual participant, he does not say a word that supports or even suggests that he felt that she was guilty of any misconduct or said or did anything to deceive him or knowingly make a false statement to him that was material to his investigation. Nor does Trooper Robert Arellano's body camera support Defendants' false claims.

28. Defendant Kenneth Porterfield is Defendant James Caleb Henson's investigator.

29. Defendant Kenneth Porterfield is Defendant Elizabeth Porterfield's husband.

30. Defendant Elizabeth Porterfield works for the Leon County Adult Probation Office and was Tammy Minter's immediate supervisor. Since her promotion to the title of Leon County Adult Probation Supervisor, Defendant Elizabeth Porterfield had been openly hostile towards Tammy Minter. Defendant Elizabeth Porterfield made her distain for Tammy Minter well known. Each morning, for example, Defendant Elizabeth Porterfield refused to acknowledge her "good

morning" greeting. Defendant Elizabeth Porterfield seldom spoke to Tammy Minter. When Defendant Elizabeth Porterfield did speak to her, Porterfield was distant and abrupt. On one occasion, Tammy Minter reached out to Deputy Director Sheila Hugo about Defendant Elizabeth Porterfield's hostile treatment of her, but no action was ever taken to rectify the situation. Defendant Elizabeth Porterfield would on occasion boast to Tammy Minter about her own perceived accomplishments and success. This included the boast by Defendant Elizabeth Porterfield that she would become the next Director of the Adult Probation Department once Defendant Kristin Hunter retired.

31. Tammy Minter recently received information that on October 17, 2024, Defendant Henson informed Defendant Kristin Hunter that he had concluded in connection with his review of James McClellan's case that James McClellan' wife, Tammy Minter, had attempted to mislead Trooper Arellano. Defendant Henson also informed Defendant Hunter that in the future, any Court related work that Tammy Minter generated concerning the Adult Probation Department would now be compromised, therefore his office would no longer sponsor any of Tammy Minter's motions or testimony in Court, which was an essential function her position with the Adult Probation Office. Defendant Henson's declarations were arbitrary and capricious, not made in good faith, contradicted by the DPS reports and body camera footage, and were contrived and false in furtherance of a scheme to discredit and damage Tammy Minter. The declarations were based on a distorted and false narrative rather than a fair representation of facts resulting from a meritorious and fair investigation. This fiat of Defendant Henson, however, was intended to and did violate the Constitution and inflict injury on Tammy Minter.

32. Tammy Minter also recently received information that on October 24, 2024, Defendant Henson sent an email to Defendant Hunter outlining the pretext for the contrived criminal

prosecution of Tammy Minter, evidencing that the basis of Defendants' persecution of Tammy Minter was an alleged "investigation" conducted by Defendant Kenneth Porterfield. Defendant Kenneth Porterfield's "investigation" was, according to Defendant Henson's email, done the day before Defendant Henson condemned Tammy Minter in his October 17, 2024, email to Defendant Kristin Hunter. Defendant Kenneth Porterfield's "investigation" consisted of his reviewing DPS records related to James McClellan's case.  Of course, an accurate review of the DPS records would have confirmed that the investigating DPS Trooper's contemporaneous report, blatantly contradicts Defendants' confabulated story that Tammy Minter knowingly sought to deceive him or interfere in his investigation.

33. Further demonstrating that Defendants that knew their pretext for persecuting Tammy Minter was false or were deliberately indifferent to the truth, none of the Defendants confronted Tammy Minter, asked any questions of her, gave her any notice of their plotting, or took any action at all  until October 31, 2024. On that day, Tammy Minter's very public  arrest was orchestrated by Defendants based on the contrived, distorted, false and misleading sworn affidavit of Defendant Kenneth Porterfield.

34. All the described activity that took place against Tammy Minter occurred when Defendant Caleb Henson was supervising and participating in negotiations with counsel for James McClellan about a plea agreement on the charges brought against James McClellan.

35. The false Affidavit was used by Defendant Keith Cook, the Leon County attorney, as a pretext to arrest Tammy Minter and hold her hostage to an unlawful threat of criminal prosecution until her husband agreed to Defendant James Caleb Henson's plea agreement demands.

36. Defendant Elizabeth Porterfield played a key role in the Defendants' plan to arrest Tammy Minter and to unnecessarily maximize her public humiliation.

37. Tammy Minter has lived and worked in Leon County for over twenty years. It is her home. Tammy Minter was not a flight risk or a threat to public safety. Nor was Tammy Minter accused of a violent crime. No need existed to publicly arrest Tammy Minter at her workplace or anywhere else. With a simply request, Tammy Minter would have voluntarily turned herself into the Leon County Sheriff's Department. Nevertheless, Defendant Elizabeth Porterfield participated in orchestrating the humiliating public arrest by ensuring that Tammy Minter would be at her workplace when it occurred and that the arrest was made in a public location and in the public eye.

38. Tammy Minter's normal office hours were 8:00 am until 4:00 pm. However, she was permitted to take "comp time" if she took the comp time during the same week that it accrued. Tammy Minter had accrued two hours of comp time the week of her arrest and had planned to leave work at 2:00 pm. Defendant Elizabeth Porterfield had incorrectly assumed that Tammy Minter would be leaving at 3:00 pm that day. When Defendant Elizabeth Porterfield realized Tammy Minter planned to leave earlier than Elizabeth Porterfield expected, she in her movements and speech demonstrated agitation and panic. Elizabeth Porterfield quickly informed one or more of those orchestrating the public arrest to ensure that the arrest would be made before Tammy Minter left work for that day.

39. Within a few minutes, two law enforcement officers arrived at Tammy Minter's office. She briefly spoke with them through the glass reception window but then walked out to speak with them in the reception area. She was told they had a warrant for her arrest.

40. In shock, Tammy Minter walked with one of the officers to the police vehicle, momentarily leaving her keys behind. She was not allowed to retrieve her purse and keys. An officer went back into the office and brought her purse and a tote bag.

41. Tammy Minter was handcuffed after she was placed into the patrol car.

42. Tammy Minter has recently learned that as she was being detained, Defendants Elizabeth Porterfield and Kristin Hunter shared light-hearted emails about how Tammy Minter was now locked out of her laptop to which they now had complete access, including all personal information. Defendant Elizabeth Porterfield confirmed to Defendant Hunter that she would bar Tammy Minter from any return to the office,

43.  At the Leon County Sheriff's Department, Tammy Minter was ordered to undress and put on an orange jumpsuit and a pair of flip flops. Tammy Minter has scoliosis. Her spine is completely fused from top to bottom, and she has pins and screws in her pelvic area. This made the dressing change quite difficult and painful.

44.  Tammy Minter was placed in a cell next to a female inmate that kept screaming and hitting the wall and door. She was in physical pain, utterly humiliated, and terrified.

45. Tammy Minter was photographed, and her fingerprints were taken. At sixty-four years old, she would now have a criminal history due to this arrest. Her "mugshot" was released and published in local papers.

46. When released on the day of her arrest, a deputy drove Tammy Minter back to her office. When Tammy Minter arrived, Defendant Elizabeth Porterfield's vehicle was still in the parking lot. Tammy Minter went to the office in order to speak with Defendant Elizabeth Porterfield but immediately realized that her office and post office box keys had been removed from her key chain by Defendant Elizabeth Porterfield when Tammy Minter was being arrested.

47.  Tammy Minter knocked on the door and Defendant Elizabeth Porterfield came to the window and coldly, as if Tammy Minter were a complete stranger, and asked, "can I help you"? Tammy Minter asked if she could speak with her, but was abruptly told "no, you need to call Kristin Hunter".

48. When Tammy Minter arrived at her home, she telephoned Defendant Kristin Hunter, who brusquely told Tammy Minter to be in her office the next day at 9:00 am.

49. November 1, 2024, the morning after her arrest, Tammy Minter was at Defendant Kristin Hunter's office as demanded by Hunter.

50. Defendant Kristin Hunter permitted Tammy Minter to enter but did not acknowledge her presence nor greet her in any way.

51. Tammy Minter took the chair next to another employee, Carol Johnston, who was sitting in front of Defendant Kristin Hunter's desk.

52. Defendant Kristin Hunter abruptly informed Tammy Minter that Defendant Henson had declared that due to Tammy Minter's August 18, 2024, conduct toward Trooper Arellano during the Trooper's investigation of a complaint made against James McClellan, Defendant Henson would not sponsor Tammy Minter as a witness in any Court proceeding and had banned Tammy Minter from submitting motions or any other type of paperwork before the Court. Defendant Kristin Hunter told Tammy Minter this was "just like a Judge banning you from Court". Even with Tammy Minter's exemplary seventeen-year service record and the fact that Tammy Minter had no disciplinary record during the entirety of her career, Kristin Hunter willingly participated in the scheme to violate Tammy Minter's constitutional rights and knowingly caused irreparable injury to Tammy Minter. Defendant Hunter did this with no show of remorse and complete and absolute indifference to Tammy Minter's rights.

53. Defendant Kristin Hunter then instructed Tammy Minter that she had only two choices she could make that day. Tammy Minter could resign/retire or be terminated.

54. Tammy Minter asked for time to think about the options and tried to give Defendant Kristin Hunter her lawyer's telephone number, which Defendant Kristin Hunter did not accept.

Instead, Defendant Kristin Hunter insisted that Tammy Minter immediately choose resignation or termination. Stunned by the coercion, an orchestrated arrest, being jailed the day before, and being denied the right to speak with her lawyer, her husband, or anyone else, Tammy Minter agreed under duress to retire. Tammy Minter was tired, in pain, scared, and alone.

55. Prior to the meeting between Tammy Minter and Defendant Hunter, Hunter had already prepared the resignation paperwork for Tammy Min O ter to sign.

56. Tammy Minter had known Defendant Kristin Hunter for over 17 years, but Defendant Kristin Hunter did not wish her well or say goodbye after the meeting concluded. Hunter dismissed her without any sign of concern or hint of remorse.

57. Defendant Keith Cook never filed charges against Tammy Minter. Instead, Tammy Minter was told that her potential charges would remain open until her husband, James McClellan, Phone 16 agreed to Defendant Henson's plea demand. Under this duress and despite his lawyer's counsel about the harshness of the plea, James McClellan accepted Defendant Caleb Henson plea demands. On November 25, 2024, James McClellan signed the probation documentation; however, the charges against Tammy Minter were not dismissed at that time. Tammy Minter was told by her husband's attorney that the County Attorney, Keith Cook would drop Tammy Minter's potential prosecution only after her husband had served his full jail time.

58. Defendant Keith Cook held the papers that would terminate the wrongful charges against Tammy Minter as a threat until Tammy Minter's husband had completed his jail term. When Tammy Minter hired an attorney, Defendant Keith Cook abruptly dropped her prosecution ironically declaring it was "in the interest of justice."

## CAUSES OF ACTION
## CLAIM I

**VIOLATION OF THE FOURTH AMMENDMENT**

59. Tammy Minter incorporates all factual allegations made in this Complaint.

60. The Fourth Amendment, as incorporated by the Fourteenth Amendment, guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. CONST. AMEND. IV and U.S. CONST. AMEND. XIV. Such violations are actionable pursuant to 42 U.S.C. Sections 1983 and 1988. Unreasonable seizures include detention or arrest without a warrant or probable cause.

61. Stripping Tammy Minter of her ability to perform her work and orchestrating her arrest lacked Constitutional justification and violated her well established Fourth Amendment rights. Any reasonable person would have known Defendants' misconduct while acting under the color of law violated Tammy Minter Fourth Amendment rights.

62. Defendants' unconstitutional misconduct as described in this Complaint caused injury to Tammy Minter.

63. An immunity defense under the circumstances described in this Complaint is not available for Defendants. The knowing misconduct of all Defendants shock the conscience of all people of goodwill.

**CLAIM II**
**VIOLATION OF 14TH AMENDMENT-PROCEDURAL AND SUBSTATIVE DUE PROCESS OF LAW**

64. Tammy Minter incorporates all factual allegations made in this Complaint.

65. The Fourteenth Amendment to the United States Constitution prevents state officials from depriving any person of life, liberty, or property without Due Process of Law.

66. At all times relevant to this Complaint, Defendants acted under the color of state law.

67. Defendants planned to and did knowingly and willfully deprive Tammy Minter's liberty and property in violation of her procedural and substantive right to Due Process of Law. Defendants planned to and did secretly conspire in a scheme to use a false narrative and distortion of facts to unlawfully justify accusing Tammy Minter of intentionally attempting to deceive Trooper Arellano. Defendants knew their scheme would cost Tammy Minter her job, result in her arrest and public humiliation, and irreparably damage her reputation.

68. Defendants scheme was intentionally done behind Tammy Minter's back without giving her any notice or opportunity to legally defend herself in any way. Defendants did not even bother to question her before taking actions that any reasonable person in their positions knew would cost Tammy Minter dearly and forever. They knowingly violated well-established rights to procedural and substantive Due Process of Law to inflict harm on Tammy Minter that could never be meaningfully repaired. Each Defendant knew they were abusing the State powers they possessed in violation of Tammy Minter's constitutional rights or acted in reckless disregard of those rights.

69. Defendants' scheme took place secretly without providing Tammy Minter any notice, asking Tammy Minter any questions, conducting a hearing, or even considering that the State Trooper Tammy Minter allegedly tried to deceive authored a  detailed report that made no mention at all any misconduct by Tammy Minter.

70. The cavalier, remorseless, and cruel nature of Defendants misconduct shocks the conscience.

71. Defendants therefore violated Tammy Minter's procedural and substantive right to Due Process of Law protected by the Fourteenth Amendment.

72. Defendants' actions directly and proximately caused injury to Tammy Minter, including the loss of her job, her unlawful arrest and detention, the unreasonable and unjustified search of and taking of property, damage to her reputation, embarrassment and humiliation, and mental and emotional distress.

73. The defendants acted with disregard for, and deliberate indifference to, Tammy Minter's constitutional rights.

74. Tammy Minter is entitled to recovery of actual, compensatory, and punitive damages against Defendants pursuant to 42 U.S.C. § 1983, and payment of her attorney's' fees and costs pursuant to 42 U.S.C. § 1988.

## CLAIM III
## CONSPIRACY TO VIOLATE CIVIL RIGHTS

75. Tammy Minter incorporates all factual allegations made in this Complaint.

76. All Defendants were part of a conspiracy that had as its objective the violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

77. Each Defendant's relevant actions, as alleged in this Complaint, were undertaken under the color of law.

78. Each Defendant knew of each other's conduct as described in this Complaint. All Defendants knowingly, willingly, and enthusiastically participated in the scheme to violate Tammy Minter's constitutional rights.

79. Defendants undertook the actions described herein with malice or a reckless indifference to and callous disregard for, and deliberate indifference to, Tammy Minter's constitutional rights.

80. Defendants' actions in furtherance of the conspiracy were the actual and proximate cause of injury to Tammy Minter, including the loss of her job, her unlawful arrest and detention, the unreasonable and unjustified search of and taking of her property, damage to her reputation, embarrassment and humiliation, and mental and emotional distress.

81. Tammy Minter is entitled to recovery of actual, compensatory, and punitive damages against Defendants. Plaintiff further seeks payment of her attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

82. Plaintiff demands her right to a jury trial.

## PRAYER FOR RELIEF

Tammy Minter requests that the Court:

A.   Enter judgment against the Defendants for compensatory damages.

B.    Award damages for Tammy Minter's present and future pain and suffering, mental anguish, anxiety, fear, anger, and depression caused by the acts of the Defendants.

C. Economic damages including past and future loss of income, retirement benefits, and reduced earning capacity.

D. Defendants' misconduct caused them to be liable for punitive damages as they were consciously indifferent to Tammy Minter's constitutional rights, and they did the acts knowing the acts were extreme and outrageous and shocking to the conscience or they were deliberately indifferent to this fact.

E. Tammy Minter is entitled to recover attorney's fees and costs to enforce her Constitutional rights under U.S.C. Sections 1983 and 1988.

F.  Tammy Minter should be awarded damages for the violations of her Constitutional rights.

G.    This Court should award such other and further relief as appears reasonable and just to which Tammy Minter shows herself entitled.

Respectfully submitted,

**JACK E. URQUHART**
**ATTORNEY AT LAW**


___/s/ Jack E. Urquhart___
State Bar No. 20415600
1302 Waugh Drive, No. 880
Houston, Texas 77019
832-723-2201
jack.urquhart47@gmail.com

ATTORNEY FOR PLAINTIFF